UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID GADDIS STUCKEY, # 299355,

    Petitioner,

v.

LINDA TRIBLEY,

    Respondent.
_____/

Case No. 4:12-CV-13358
Hon. Mark A. Goldsmith

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING PETITIONER LEAVE TO APPEAL IN FORMA PAUPERIS**

**I. INTRODUCTION**

David Gaddis Stuckey ("Petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 2007, Petitioner was convicted in the Shiawassee Circuit Court of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a) (engaging in sexual penetration with a person under the age of thirteen) ("CSC I"), and second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(a) (engaging in sexual contact with a person under the age of thirteen) ("CSC II"). Petitioner was sentenced to prison terms of 5-to-20 years for his CSC I conviction and 5-to-15 for his CSC II conviction. In his pro se application, Petitioner challenges the Michigan Parole Board's refusal to grant him parole. The petition for writ of habeas corpus will be denied because Petitioner's claims are without merit. The Court will also deny Petitioner a certificate of appealability and permission to proceed on appeal in forma pauperis.

## II. BACKGROUND

The Michigan Parole Board first denied parole to Petitioner on March 15, 2011. Despite a parole guideline score that indicated a "high probability" of parole, the Board denied parole because "Prisoner is serving for his second CSC conviction involving molestation of his minor daughter's friends. This case is currently on appeal. No basis for positive Board action at this time as there is no reasonable assurance risk is reduced." MDOC Parole Bd. Records at 19 (Dkt. 15-16). Despite another favorable parole guideline score, Petitioner was again denied parole on September 17, 2012. The order indicated that "Prisoner needs to complete programming to gain insight into his deviant behavior, at this time he is still a risk." Id. at 3.

Petitioner attempted to appeal the Parole Board's first decision denying him parole, but the Shiawassee Circuit Court denied relief in an opinion dated October 3, 2011, finding that denials of parole were not appealable by the prisoner. Petitioner then filed a delayed application for leave to appeal with the Michigan Court of Appeals, but on February 6, 2012, that court dismissed his delayed application, noting that Petitioner had no right to seek judicial review of the Parole Board's decision to deny parole. People v. Stuckey, No. 307019 (Mich. Ct. App. Feb. 6, 2012) (Dkt. 15-13).

On July 24, 2012, Petitioner filed the instant petition. His habeas application and supplemental brief raise the following five claims:

> I. Statute is contract when legislative intent is clearly expressed to grant private rights to a party based upon that party's performance.
>
> II. The private right conferred by the compulsory language of the statute/contract is a private right to due process based upon a liberty interest contingent upon a party's performance and is entitled to enforcement.
>
> III. The Michigan Parole Board violated constitutional ex post facto prohibitions when it relied upon historical factors to deny parole.

>IV. Parole Board denying Petitioner parole based on the fact that [Stuckey] has maintained his innocence (and who has not exhausted his pending appeal that his based on his assertion of innocence) violates Petitioner's Fifth and Fourteenth Amendment rights as guaranteed by the U.S. Constitution.
>
>V. Petitioner argues that it was clear abuse of discretion when the Parole Board failed to provide sufficient, substantial and compelling reasons for denying his parole after he scored high-probability of parole as determined by the parole guidelines score-sheet.

Pet. at cm/ecf Pg ID 6-7 (Dkt. 1).

### III. ANALYSIS

#### A. Exhaustion of State-Court Remedies

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to present claims so that state courts have an opportunity to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. O'Sullivan, 526 U.S. at 842. To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. Hafley v. Sowders, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845.

In Michigan, however, a prisoner does not have the ability to appeal a parole denial. The state law in question provides only that a grant of release on parole may be appealed by the prosecutor or the victim. Mich. Comp. Laws § 791.234(11). Accordingly, the Sixth Circuit Court of Appeals has held that a Michigan prisoner's failure to exhaust his equal protection challenge to parole procedures is excused under 28 U.S.C. § 2254(b)(1)(B)(i) because Michigan

law does not provide a state corrective process for such a claim. Jackson v. Jamrog, 411 F.3d 615, 618 (6th Cir. 2005). Consequently, because state statute prohibits a prisoner from appealing a parole denial, Petitioner appears to have no available state court remedy to exhaust his claims. Petitioner claims are therefore properly before the Court.

### B. Claims I, II, and V

Petitioner's first and second claims assert that Michigan law gives prisoners a liberty interest in being released on parole prior to the expiration of their maximum sentence. His fifth claim asserts that the Parole Board did not give sufficient reasons for denying him release on parole that outweighed this liberty interest. These arguments are without merit.

The United States Supreme Court has held that there is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the existence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. Id. at 7, 11. Rather, a liberty interest is present only if state law entitles an inmate to release on parole. Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth., 929 F.2d 233, 235 (6th Cir. 1991).

In Sweeton v. Brown, 27 F.3d 1162 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. Id. at 1164-1165. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of Sweeton and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. See, e.g., Foster v. Booker, 595 F.3d 353, 368 (6th Cir. 2010); Ward v. Stegall, 93 F. App'x 805, 807 (6th Cir. 2004).

4

Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty. The parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." Greenholtz, 442 U.S. at 11. Therefore, the Michigan Parole Board's denial of parole implicates no federal right to due process.

### C. Claim III

Petitioner's third claim asserts that the Michigan Parole Board violated the Ex Post Facto Clause of the U.S. Constitution by looking only at his past conduct as grounds for denying him parole. Petitioner argues that at the time of his offense the practice of Parole Board was to look at factors other than the nature of the crime to determine whether to parole a prisoner, and that its new practice of denying parole solely on the basis of the offense cannot be retroactively applied to him.

In Foster-Bey v. Rubitschun, No. 05-71318, 2008 WL 7020690 (E.D. Mich. Oct. 23, 2007), the district court found that changes in Michigan's parole procedures violated the Ex Post Facto Clause as to parolable lifers in the Michigan prison system. The Sixth Circuit reversed that decision, however, stating:

> To the extent that plaintiffs face a risk of increased punishment under the post 1992 parole laws as compared to the laws in effect when they committed their offenses, we cannot conclude that changes to the parole laws caused such an increase. Rather, the new Board's low rates of parole may be attributable largely to the legitimate exercise of discretion in granting fewer paroles. Even assuming that changes in the number of paroles did not result from a stricter exercise of discretion, it is not clear that plaintiffs have shown a sufficient risk of increased punishment to prevail on their ex post facto claim. Thus plaintiffs were not entitled to judgment as a matter of law, and the summary judgment and grant of injunctive relief must be reversed.

Booker, 595 F.3d at 355-56.

5

Petitioner's claim fails because it based on a faulty factual premise. The language of the Parole Board's decision did not indicate that it relied solely on the nature of his offense as the basis for denying parole. The latest decision stated that Petitioner was denied release on parole because he had not completed programming or gained insight in the reasons for his behavior and therefore still posed a risk. MDOC Parole Bd. Records at 3.

In addition, as in Booker, Petitioner has not demonstrated that there are any new parole laws that negatively impacted the Parole Board's decision not to parole him. In fact, it is rather unsurprising that a recidivist sex offender, convicted of first-degree CSC, and who has been unable to complete sex offender therapy, has been required to serve more than six years of his twenty-year maximum sentence. Petitioner is, therefore, not entitled to relief based on alleged changes to the Parole Board's policies.

**D. Claim IV**

Petitioner's fourth claim asserts that he was denied parole in violation of his Fifth Amendment right against self-incrimination. Petitioner argues that the Parole Board has noted that fact that he maintains his innocence as a reason for denying his parole.

In McKune v. Lile, 536 U.S. 24 (2002), the Supreme Court concluded that requiring a convicted sex offender to admit responsibility for his criminal conduct as part of a prison rehabilitation program did not violate the prisoner's Fifth Amendment right against self-incrimination. Id. at 29, 48. In that context, the Court noted that "rehabilitation is a legitimate penological interest that must be weighed against the exercise of an inmate's liberty." Id. at 36.

Indeed, the Fifth Amendment right against self-incrimination is not implicated by the alleged pressure on a prisoner to admit, in order to improve his chances for parole, that he committed the crime for which he is incarcerated. Hawkins v. Morse, 194 F.3d 1312, at *2 (6th

6

Cir. 1999) (Table) ("[I]t cannot be said that the alleged pressure to admit that he committed the crime for which he is incarcerated in order to improve his chances for parole forces [petitioner] to incriminate himself in violation of the Fifth Amendment."). Therefore, the Parole Board's consideration of the fact that Petitioner did not complete sex offender programing, and refuses to acknowledge his guilt for the crimes of which he already has been convicted, does not violate his Fifth Amendment rights.

### IV.  CONCLUSION

The Court will deny the petition for writ of habeas corpus. Upon the denial of a habeas petition, a federal district court may grant or deny a certificate of appealability. Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002). As set forth below, the Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. Id. at 484.

Here, the Court will not issue a Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. Dell v. Straub, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). Because Petitioner does not have a protected liberty interest in being granted parole, he has failed to make a substantial showing of

the denial of a constitutional right and is therefore not entitled to the issuance of a certificate of appealability on this claim. The Court will also deny Petitioner leave to appeal in forma pauperis, because the appeal would be frivolous. See Fed. R. App. P. 24(a)(3).

Based upon the foregoing, the Petition for a writ of habeas corpus (Dkt. 1) is dismissed. The Court also declines to issue a certificate of appealability and denies Petitioner leave to appeal in forma pauperis.

SO ORDERED.

Dated: February 4, 2014            s/Mark A. Goldsmith
      Flint, Michigan            MARK A. GOLDSMITH
                                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 4, 2014.

                                            s/Deborah J. Goltz
                                            DEBORAH J. GOLTZ
                                            Case Manager